## FRANK *vs.* HARRINGTON.

Hops, growing and maturing on the vines, which are produced by the annual cultivation of the owner, are personal chattels within the meaning of the statute of frauds; and as such are subject to sale like other personal property.

THIS action was tried before CAMPBELL, J. at the Madison circuit, in September, 1861. The case shows that on the 17th day of August, 1860, the plaintiff entered into a parol contract with the defendant for the purchase of his crop of hops, of about seven thousand pounds, then growing and maturing on the defendant's farm, for the price of thirteen cents per pound. The plaintiff paid down one dollar, and was to pay the balance when the hops were delivered at the defendant's kiln on the premises, and accepted by the plaintiff.

The defendant refused to deliver the hops in pursuance of the sale, and the plaintiff thereupon sued him for the damages. On the opening of the case by the plaintiff's attorney, the defendant moved the court to nonsuit the plaintiff upon the ground that the contract for the sale and delivery of hops then growing and maturing was void, said hops being real estate. Whereupon the court nonsuited the plaintiff; to which ruling and decision the plaintiff's counsel excepted. The exceptions were ordered to be heard in the first instance at a general term.

*B. F. Chapman* and *H. A. Foster,* for the plaintiff.

*Schoolcraft & Snow,* for the defendant.

*By the Court,* MORGAN, J. The question is whether hops, growing and maturing on the vines, are real or personal property.

When the argument was opened, I supposed that perhaps the decision of this question was involved in the judgment of the court of appeals in *Bishop* v. *Bishop,* (11 *N. Y. Rep.*

123.) But the counsel on both sides treat that case as one which depends upon other considerations, and not necessarily involved in the decision of this. The question there was whether hop poles were real or personal property ; and they were declared to be real estate, because they were "habitually attached to the land," although "not constantly fastened to it." Gardiner, Ch. J., who delivered the opinion of the majority of the court, observed, however, that " the root of the hop is perennial, continuing for a series of years. That this root would pass to the purchaser of the real estate, there can be no question."

It is conceded, in the very learned argument of the plaintiff's counsel in this case, that the root of the hop is real estate ; but he contends that the crop itself, like grain, is personal property. And to this point he cites *Latham* v. *Atwood*, (*Croke Charles*, 515.) The report of that case states that the question was, " whether these hops appertained to the baron or to him in remainder." And the court held that " they be like emblements which shall go to the baron or executor of the tenant for life, and not to him in remainder ; and are not to be compared to apples or roots which grow of themselves ; wherefore adjudged for the plaintiff."

The same resolution was come to in an anonymous case reported in 2 *Freeman's Reports of Cases in Law and Equity*, 210 ; and afterwards in *Fisher* and *Forbes*, referred to in 9 *Viner*, 373, *pl.* 82. And according to 9 *Viner*, 372, *pl.* 77, " hops growing out of old roots shall go to the executor or administrator, because they grow by the manurance and industry of the owner, and so are emblements."

The same law is declared in 3 *Bacon's Ab. tit. Ex'rs and Adm'rs*, (*H*), *p.* 493. And such is the statement of several other authors who undertake to give the rule as it was understood to exist in England prior to our revolution. Most of these authors refer to the case of *Latham* v. *Atwood* as authority. The reason of the rule, as stated in the report of that case, is that " they (hops) be such things as grow by

Frank *v.* Harrington.

manurance and industry of the owner, by the making of hills and setting poles." The plaintiff's counsel have also referred to some late English decisions which, without deciding the question, recognize the law as laid down by the court in *Latham* v. *Atwood.* (*See Evans* v. *Roberts, 5 B. & C.* 829, and *Graves* v. *Weld, 5 B. & Ad.* 105.)

The reason given by the court in *Latham* v. *Atwood* for holding hops to be personal instead of real estate, is very satisfactory. It is well known that the value of the crop depends in a very great measure—almost entirely—upon the " manurance and industry of the owner ;" and like other annual crops, which depended upon yearly cultivation, should go to enhance the personal estate.

The defendant's counsel have submitted a very ingenious argument, the principal point of which is to show that hops are *natural* products of the earth ; and as such, real estate, like growing trees, grass and fruit. As an original question his argument would be very satisfactory to prove that strawberries and grapes, as now cultivated, grow by the same "*manurance and industry of the owner,*" as hops, and should be put in the same category ; although the result would be that they too ought to be treated as personal instead of real estate.

The decisions are not uniform as to the rule which should distinguish between real and personal property, within the meaning of the statute of frauds. In some cases it is held that grass is personal property, if sold in prospect of separation from the freehold. (*Roberts on Frauds,* 126.) But the majority of the cases hold that if the subject grows spontaneously, *without cultivation, or annual cultivation,* it is a part of the realty. (6 *East,* 602. 1 *Barb.* 542. 1 *Denio,* 550. 6 *Gill & J.* 188.) Such undoubtedly were the views of the revisers when they recommended the legislature to enact the provisions contained in the revised statutes, declaring the following, among other things, to be assets, viz : " Crops growing on the land of the deceased at the time of his death,"

and "any kind of produce raised *annually by labor and cultivation*, except grass growing or fruit not gathered." (2 *R. S.* 83, §§ 5, 6.) They state that their object was " to enumerate those articles which are likely to occasion doubt, to settle some disputed cases, and yet to include every thing which ought to be included, by the use of general terms, to protect the heir." (3 *R. S.* 2d ed. *p.* 639.) It will readily be seen that the rule must be more or less arbitrary in relation to fruit, as much if it is grown by great annual labor, while some of it requires but little cultivation. The rule can hardly be made to change, so to meet the varying changes which occur in the cultivation of these natural productions. As the value of the hop depends so essentially upon manurance and annual cultivation, there is no reason why it should be taken out of the category of " produce raised annually by labor and cultivation," by any new interpretation of the statute of frauds. It would be more just to the rights of parties to take certain varieties of fruits from the statute definition and call them assets ; as their value and quantity depend almost altogether upon manurance and annual cultivation ; especially the grape and strawberry. It requires but little soil to raise them, and in other respects they are produced by personal labor and at the expense of the personal rather than of the real estate of the owner. And to produce uniformity and prevent confusion, these various productions of the soil should, if consistent with the decisions of the courts in other cases, be treated as real or personal property, whether the question arises between the heir and executor, or between the debtor and creditor, or within the definition of the statute of frauds. The statute being silent as to hops, we must decide this question upon authority independent of the statute. I have already referred to the English decisions, which put them in the category of personal property, and the reasons which influenced the court in coming to that conclusion. And I have expressed my satisfaction with the reasons as given in the original case of *Latham* v. *Atwood*, (*Croke*

*Charles,* 515.)   The defendant's counsel has, by great research, found several cases which he thinks overrule the decision of the court in *Latham* v. *Atwood.*   The first case cited by him is *Woddington* v. *Bristow,* (2 *Bos. & P.* 452.) But the hops which were the subject of the contract in that case were not yet growing upon the vines.   They were not *in esse* at the time the contract was made, and therefore not the subject of sale.   And such is the statement of the case by the judges.   The case of *Latham* v. *Atwood* was not even alluded to.   The case of *Emmerson* v. *Heelis,* (2 *Taunton,* 38,) is more to the point.   That was a sale of turnips in the ground, and the court held that it was a sale of an interest in land and must be in writing.   Mansfield, Ch. J. said he could not distinguish it from the case of hops.   But the case does not profess to overrule *Latham* v. *Atwood,* and the decision is wholly irreconcilable with subsequent English cases and the decisions of our own courts, without exception, so far as they have come under my observation.   The decision of the court in *Parker* v. *Standard,* (11 *East,* 362,) *Crosby* v. *Wadsworth,* (6 *id.* 602,) *S. C.,* (2 *Smith,* 559,) approve of the case of *Woddington* v. *Bristow,* (2 *Bos. & Pul.* 452,) but upon grounds which, at the present day, are not regarded as authority.   (*See Green* v. *Armstrong,* 1 *Denio,* 550, 555, 6 ; *Mumford* v. *Whitney,* 15 *Wend.* 380, 386, 7.)   The case of *Woddington* v. *Bristow* was again under review in the English courts in *Jones* v. *Flint,* (10 *Ad. & El.* 753, 759,) and it was said by the judge (Lord Denman, Ch. J.) who delivered the opinion of the court, that it was " very difficult to reconcile all the cases, and still more so all the *dicta* on the subject, from the case of *Woddington* v. *Bristow* to the present time, and we are therefore left at liberty to abide by a general principle."   The judge observed :   " We agree that the safer grounds of decision are the legal character of the principal subject matter of sale, and the consideration whether in order to effectuate the intentions of the parties, it be necessary to give the vendee an interest in the land."   And he re-

fers with approval to the case of *Evans* v. *Roberts*, (5 *B. & C.* 829, 837, 840,) where Littledale, J. says : " I think a sale of any growing produce of the earth (reared by labor and expense) in actual existence at the time of the contract, whether it be in a state of maturity or not, is not to be considered a sale of an interest in or concerning land, within the meaning of the 4th section of the statute of frauds." It was held in *Jones* v. *Flint* that corn and potatoes were goods and chattels within the meaning of the statute of frauds, and for the reason that they are *fructus industrialles*, while grass is not. (*Id. p.* 758.) This is the same reason given in *Latham* v. *Atwood* for holding that hops growing and maturing on the vines are chattels personal and not chattels real.

In my opinion, therefore, hops, growing and maturing on the vines, which are produced by *annual cultivation* and the industry of the owner, are personal chattels within the meaning of the statute of frauds, and as such subject to sale like other personal property.

A new trial should be granted ; costs to abide the event.

New trial granted.

[ONONDAGA GENERAL TERM, April 1, 1862. *Mullin, Morgan* and *Bacon,* Justices.]